DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
_____

ANGEL GABRIEL MEJIA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2025-0288
_____

May 1, 2026

Appeal from the Circuit Court for Manatee County; Frederick P.
Mercurio, Judge.

Blair Allen, Public Defender, and Diana L. Johnson, Assistant Public
Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and William A. Leto,
Assistant Attorney General, Tampa, for Appellee.

LABRIT, Judge.

        This appeal requires us to decide whether a single, generalized
sentence in a pro se motion for postconviction relief obligated the
postconviction court to treat that sentence as a separate involuntary plea
claim. We conclude it did not. Because the motion did not fairly present
the theory Mr. Angel Mejia now advances on appeal—and because the
plea colloquy conclusively refutes that theory in any event—we affirm.
We write because the issue arises with some frequency in postconviction
practice, and the existing cases, though helpful, do not always give

postconviction courts and litigants concrete guidance about when an inartfully-worded allegation crosses the line from a stray statement into a claim that must be addressed on the merits or afforded an opportunity to amend under *Spera v. State*, 971 So. 2d 754 (Fla. 2007).

We are mindful that postconviction courts often address arguable claims and subclaims in an abundance of caution, even when those theories are only vaguely suggested by the motion. That caution is understandable, but the result may be unnecessary "make-work," *see Foster v. State*, 385 So. 3d 176, 176 n.2 (Fla. 2d DCA 2024) (LaRose, J., concurring), as postconviction courts attempt to anticipate every theory an appellate court might later infer from isolated phrases in a pro se motion. We do not think the rules require that exercise. The purpose of this opinion is to provide a more workable framework for identifying when a claim has been sufficiently presented that it must be addressed or afforded a *Spera* opportunity to amend, and when it has not.

The same uncertainty has consequences not only for pleading and amendment, but also for appellate review. If every omission in the presentation of an inartfully suggested theory required reversal, postconviction courts would be driven to read vague allegations as broadly as possible and rule expressly on matters not fairly presented simply to guard against remand. The rules do not compel that kind of prophylactic adjudication. Thus, we write further to explain the limited circumstance in which, even assuming a claim was sufficiently raised, the failure to expressly address it does not require reversal because the targeted record attachments permit meaningful review and conclusively refute the claim.

I.

2

Mr. Mejia entered an open plea in October 2021. At the hearing, the trial court confirmed that Mr. Mejia had the plea form in front of him, and that he had reviewed it with counsel. The State and the court addressed the applicable penalties, including that Counts I and II each carried a twenty-five-year minimum mandatory sentence:

> THE COURT: So Count I and II carries with it a twenty-five-year mandatory minimum sentence [on] each count. The mandatory minimums apply to each count. So Count I you could receive up to life in prison. As part of that life sentence, you would be sentenced to twenty-five years in prison. Count II, the aggravated battery with great bodily harm with the use of a firearm, is a first-degree felony with a maximum of thirty years in prison, and as part of that thirty year maximum, you would have a twenty-five-year mandatory minimum.

The court required Mr. Mejia to confirm he understood the sentencing exposure associated with the open plea:

> THE COURT: Okay. So Mr. Mejia, you have to go into this plea and into this potential sentencing thinking that you could receive a sentence of up to life in prison in Count I, with a twenty-five-year mandatory minimum, Count II, thirty years in prison, with a twenty-five-year mandatory minimum, Count III, a fifteen-year prison sentence, and Count IV, a fifteen-year prison sentence. Do you understand those things?
>
> [MR. MEJIA]: Yes, Your Honor.

The trial court also explained the scoresheet and obtained Mr. Mejia's acknowledgment that he understood the lowest permissible sentence the court had announced:

> THE COURT: . . . [I]t scores you to a lowest permissible prison sentence of 191.250 months in the Department of Corrections. Do you understand that?
>
> [MR. MEJIA]: Yes, Your Honor.
>
>  . . . .

3

THE COURT: Do you also understand the scoresheet minimum that I spelled out for you a moment ago?

[MR. MEJIA]: Yes, Your Honor.

During the colloquy, defense counsel advised the court that the plea paperwork misstated the minimum mandatory and acknowledged responsibility for the error: "That was my error on the plea form. It should be the twenty-five-year minimum mandatory."

While reviewing the plea form, the trial court directed that the form be corrected in open court by crossing out "three years" and inserting "twenty-five years" and that Mr. Mejia initial the correction:

> THE COURT: . . . With the assistance of the court deputy, I'd like him to cross out . . . the three years where it says mandatory minimum under paragraph one, and write in twenty-five years, and have Mr. Mejia put his initials next to that.
>
> THE COURT DEPUTY: So "if any" is twenty-five years, not three years?
>
> THE COURT: Correct. Cross out the three and insert twenty-five.
>
> I've reviewed the charges with you, and I've spelled them out. I've told you the maximum penalties, the minimum penalties, and we're correcting the maximum penalty on the form Mr. Brewer sent to you.

The trial court made clear that, notwithstanding the scoresheet total, the minimum mandatory controlled absent a lawful basis to depart, and again obtained Mr. Mejia's confirmation of understanding:

> THE COURT: Now, even though the 191 is less than the mandatory minimum, if I decide not to depart below the scoresheet for some supportable legal reason, you are going to get a sentence of up to life in prison with a twenty-five-year mandatory minimum in Count I, up to thirty years in Count II, with a twenty-five-year mandatory minimum, up to fifteen years in Count III, and up to fifteen years in Count IV. Do you understand that?

4

[MR. MEJIA]: Yes, Your Honor.

Finally, the court confirmed on the record that Mr. Mejia had not been promised anything and had not received any contrary information about the mandatory minimum penalties:

> THE COURT: Has anybody told you anything different than what I've told you today with respect to what the maximum penalties are, the mandatory minimum penalties that apply in your case, and the scoresheet total that I've announced? Anybody tell you anything different?
>
> [MR. MEJIA]: No, sir.
>
> THE COURT: Has anyone promised you the sentence that you will receive?
>
> [MR. MEJIA]: No, Your Honor.

The trial court ultimately sentenced Mr. Mejia to twenty-five years in prison as a minimum mandatory sentence on Counts I and II, and to fifteen years in prison on Counts III and IV, with all counts ordered to run concurrently.

Mr. Mejia later filed a pro se motion for postconviction relief. Claim two of that motion read, in relevant part, as follows:

> Trial Counsel failed in his duty to Defendant when, during sentencing upon open plea to this court, counsel failed to object to the upward departure from the lowest permissible sentence. As it is clear from the face of the record, Defendant's scoresheet shows a minimum permissible sentence of three (3) years, although this court sentenced the Defendant to twenty-five (25) years with a minimum mandatory, without written reasoning. This is contrary to *Moore v. State*, 747 So. 2d 427, "Failure of Counsel to object to upward departure without written reasons is ineffective assistance," as well as Fla. R. Crim. P. 3.702. "One way to show a manifest injustice is by proving the plea was not entered Voluntarily." *See Wendall v. State*, 39 So. 3d 419, *See also Campbell v. State*, 125 So. 3d 773, 736, "When

5

Defendant seeks to withdraw a guilty plea after sentencing he must demonstrate that the withdrawal is necessary to correct a manifest injustice."

"Defendant who pled and claims ineffective assistance of counsel establishes prejudice by demonstrating a reasonable probability that but for counsel's error, he would not have pled and would have insisted on going to trial[.]" *See Grosvenor v. State*, 874 So. 2d 1176; *Hill v. Lockhard*, 474 U.S. 52; 106 S.Ct. 366. It is Defendant's contention that he has met the standard of proving ineffective assistance of counsel and prejudice set forth within *Strickland v. Washington*, 466 U.S. 668; 104 S.Ct 2052. As is irrefutable on the face of the record, had counsel acted effectively and within professional standard guidelines, Defendant would have been saved this manifest injustice and would have proceeded to trial. <u>Counsel failed in his fundamental duties to properly advise client of the upward departure as well as not objecting to same</u>.

Defendant's plea was rendered involuntary upon counsel performing below professional norms, constituting ineffective assistance of counsel. . . .

(Emphasis added.)

The postconviction court construed this claim as one alleging ineffective assistance of counsel for counsel's failure to object to the imposition of a mandatory minimum sentence, correctly construing Mr. Mejia's arguments as inadvertently identifying the mandatory minimum sentence as an upward departure. The postconviction court denied that claim and Mr. Mejia does not challenge that denial in this appeal. Rather, he argues that the postconviction court erred by failing to address his claim that trial counsel was ineffective for misadvising him about the applicability of the mandatory minimum sentence, taking the implied position that a single sentence—"Counsel failed in his

6

fundamental duties to properly advise client of the upward departure as well as not objecting to same"—was sufficient to apprise the postconviction court of the existence of a subclaim within claim two of his postconviction motion.  As we explain, Mr. Mejia is incorrect.

## II.

The starting point is Florida Rule of Criminal Procedure 3.850 itself.  The rule requires a movant to include "the nature of the relief sought" and "a brief statement of the facts and other conditions relied on in support of the motion."  Fla. R. Crim. P. 3.850(c)(6), (7).  The rule then distinguishes among different categories of pleadings.  If the motion is timely but "insufficient on its face," the postconviction court must allow amendment.  Fla. R. Crim. P. 3.850(h)(2).  If the motion "sufficiently states [one] or more claims for relief and it also attempts but fails to state additional claims," the postconviction court likewise must allow amendment of those additional insufficient claims.  Fla. R. Crim. P. 3.850(h)(3).  And unless the motion and record conclusively show that the defendant is entitled to no relief, the court must require the State to answer the "sufficiently pleaded claims."  Fla. R. Crim. P. 3.850(h)(6).  The rule also provides that a motion for rehearing must rest on a good faith belief that the court has overlooked a "*previously argued* issue of fact or law" or an argument based on authority not previously available.  Fla. R. Crim. P. 3.850(*l*) (emphasis added).

Taken together, those provisions reflect a workable and sensible distinction.  A postconviction court must address claims that are fairly presented in the motion.  If such a claim is timely but insufficiently pleaded, the court must permit amendment under *Spera*.  But the court is not required to invent (and address) claims that the motion never fairly articulated in the first place.  Rule 3.850(h)(3)'s reference to a motion

7

that "attempts but fails to state additional claims" presupposes that the motion has, at minimum, actually attempted to state those claims. Likewise, rule 3.850(*l*)'s limitation of rehearing to a "previously argued issue" presupposes that the point was argued in some recognizable way before the postconviction court ruled. Liberal construction of a pro se motion does not relieve the movant of the obligation to present a claim clearly enough to place the postconviction court and the State on notice of the issue to be litigated.

That understanding is consistent with this court's cases. In *Dries v. State*, 899 So. 2d 489, 489 (Fla. 2d DCA 2005), for example, the movant's pro se claims were "either facially insufficient or only marginally sufficient," but he then filed a timely motion for rehearing, through counsel, elaborating on the claims and seeking leave to supplement the motion. We held that the postconviction court abused its discretion in denying rehearing and the attendant opportunity to supplement. *See id.* at 489–90. Similarly, in *Pressley v. State*, 241 So. 3d 960, 961 (Fla. 2d DCA 2018), the movant's arguments were "hardly . . . models of clarity," but he filed a rehearing motion clarifying the prejudice aspect of his theory. We reversed because the postconviction court had missed that clarified aspect of the claim and, citing *Dries*, we directed that amendment be permitted if needed. *See id.* at 961–62. Those decisions are significant not merely because they allowed clarification, but because (1) the clarification occurred by rehearing, while the postconviction court still had the case before it and an opportunity to address the movant's intended theory in the first instance, and (2) they show that where a movant believes the court has overlooked a theory that was inartfully presented, the rehearing mechanism exists to clarify that theory.

8

Nor does *Bilotti v. State*, 27 So. 3d 798 (Fla. 2d DCA 2010), compel a different result. There, although the motion was not a model of clarity, the ground at issue contained additional, identifiable allegations that were fairly part of the same theory the movant had pleaded, and the postconviction court erred by reading the ground too narrowly. *Id.* at 800-01. But *Bilotti* does not require a postconviction court to spin off a separate constitutional theory from the barest smattering of language untethered to any articulated factual predicate.

We therefore hold that, when confronted with an inartfully drafted pro se motion under rule 3.850, the postconviction court should proceed in three steps. First, the postconviction court should determine whether the motion, read liberally but fairly, actually presents a distinct claim or subclaim at all. At a minimum, every claim and subclaim must identify the act or omission complained of, connect that act or omission to a recognizable legal theory, and allege facts showing entitlement to relief under that theory. *See* Fla. R. Crim. P. 3.850(c)(6), (7). A stray phrase or conclusory sentence embedded in an otherwise different claim does not, by itself, require the postconviction court to treat that language as a separate claim.

Second, if the motion does fairly present a distinct claim or subclaim, the court should determine whether that claim is legally sufficient, legally insufficient but curable, legally insufficient and incurable, legally sufficient but conclusively refuted by the record, or legally sufficient and not conclusively refuted by the record. If the motion timely presents a recognizable claim but pleads it defectively, then *Spera* and rule 3.850 require a reasonable opportunity to amend. *See Spera*, 971 So. 2d at 761; Fla. R. Crim. P. 3.850(h)(2), (3). But the duty to permit amendment arises when the motion has actually

9

attempted to state the claim; it does not require the postconviction court to create a new claim from an isolated sentence that never fairly articulated the factual and legal basis for relief in the first place.

Third, if after the first two steps the postconviction court concludes that a motion only ambiguously suggests a possible additional theory, the court need not sua sponte treat that theory as a distinct claim. Instead, the postconviction court should rule on the claims and subclaims that were fairly presented and, if appropriate, allow amendment only as to claims the motion actually attempted to state but pleaded defectively. That approach follows rule 3.850's distinction between "sufficiently pleaded claims" and motions that "attempt[] but fail[] to state additional claims." *See* Fla. R. Crim. P. 3.850(h)(3), (6).

If the movant later contends that the postconviction court overlooked a theory that was in fact argued, the proper mechanism is a motion for rehearing identifying the "previously argued issue of fact or law" said to have been overlooked. *See* Fla. R. Crim. P. 3.850(*l*). In that circumstance, the postconviction court should determine whether the clarified theory was fairly embedded in the original motion. If it was, the court should then decide whether the theory is facially sufficient, curably insufficient and therefore subject to amendment under *Spera*, incurably insufficient, or conclusively refuted by the record. If no rehearing motion is filed, or if the rehearing motion identifies a theory not fairly presented in the original motion, the postconviction court is not required to revisit its ruling on the ground that it failed to infer a claim the motion never clearly advanced.

This framework also provides practical guidance to postconviction litigants. For each claim and subclaim, the motion should identify the specific act or omission complained of, explain why that act or omission

10

matters under a recognizable legal theory, and allege the facts showing entitlement to relief on that theory. That approach accords with the rule's basic requirement that the motion state the nature of the relief sought and the facts relied on in support of the motion, and it is consistent with the rule's distinction between sufficiently and insufficiently pleaded claims. *See* Fla. R. Crim. P. 3.850(c)(6), (7), (h)(2), (3), (6). A motion that merely hints at a theory, labels a ruling in generalized terms, or leaves the postconviction court to infer the operative facts, legal basis, and prejudice component has not fairly presented a claim for adjudication. And if a movant believes the postconviction court has misunderstood or overlooked a theory that was actually argued, rule 3.850's rehearing provision supplies the mechanism to clarify that point by identifying the "previously argued issue of fact or law" said to have been overlooked. *See* Fla. R. Crim. P. 3.850(*l*).

Applying that framework here, Mr. Mejia's motion did not fairly present a distinct involuntary plea claim based on counsel's alleged failure to advise him of the twenty-five-year minimum mandatory. The single sentence on which Mr. Mejia now relies did not identify the twenty-five-year minimum mandatory as the omitted advice, did not allege that he entered the plea without understanding that consequence, and did not allege that he would have rejected the plea and insisted on proceeding to a trial had he known. And because Mr. Mejia filed no rehearing motion identifying that theory as a previously argued issue the postconviction court had overlooked, the postconviction court was not required to revisit claim two on that basis. Under these circumstances, the court did not err by failing to treat that sentence as a distinct claim requiring an express ruling or a *Spera* opportunity to amend.

11

III.

We write further to explain that, even if claim two were construed to include the theory Mr. Mejia now claims, we would still affirm because the plea colloquy conclusively refutes it.

A.

A mandatory minimum sentence is a direct consequence of a plea. *See State v. Coban*, 520 So. 2d 40, 42 (Fla. 1988); *Thornton v. State*, 747 So. 2d 439, 441 (Fla. 4th DCA 1999). Thus, a facially sufficient claim that counsel's omission rendered a plea involuntary would have had to allege not only that counsel failed to advise Mr. Mejia of the twenty-five-year minimum mandatory but also that Mr. Mejia entered the plea without understanding that consequence. *Cf. Townsend v. State*, 927 So. 2d 1064, 1065 (Fla. 4th DCA 2006). And because the theory sounds in ineffective assistance during the plea process, the claim also would have had to allege prejudice—namely, a reasonable probability that, but for counsel's error, Mr. Mejia would not have entered the plea and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Grosvenor v. State*, 874 So. 2d 1176, 1179 (Fla. 2004); *Campbell v. State*, 139 So. 3d 490, 494 (Fla. 2d DCA 2014).

Mr. Mejia did not allege those things. But even setting that pleading deficiency aside, the record refutes the factual predicate of the theory. The transcript shows that the State and the trial court expressly advised Mr. Mejia that Counts I and II each carried a twenty-five-year minimum mandatory. The court then required the written plea form to be corrected in open court to reflect that twenty-five-year minimum mandatory, and Mr. Mejia initialed the correction. The court further confirmed that no one had told Mr. Mejia anything different regarding the

12

mandatory minimum penalties that applied in his case, and Mr. Mejia answered that no one had.

Those sworn assurances matter. Florida courts routinely hold that a defendant may not later "go behind the plea" by contradicting sworn representations made during a plea colloquy. *See Stano v. State*, 520 So. 2d 278, 279–80 (Fla. 1988); *see also Kelley v. State*, 109 So. 3d 811, 812–13 (Fla. 1st DCA 2013). They likewise treat such sworn acknowledgments, when coupled with an adequate advisement of sentencing consequences, as conclusively refuting later allegations that a plea was induced by misunderstanding or undisclosed sentencing exposure. *See, e.g.*, *Simmons v. State*, 611 So. 2d 1250, 1253 (Fla. 2d DCA 1992); *Colon v. State*, 595 So. 2d 271, 272 (Fla. 2d DCA 1992).

This case is thus unlike *Townsend*, 927 So. 2d at 1066, where a signed plea form, without a colloquy establishing the defendant's understanding, was insufficient to conclusively refute the defendant's claim. And it is unlike *Chandler v. State*, 843 So. 2d 1046, 1046–47 (Fla. 2d DCA 2003), where the record did not refute the allegation because the trial court had not inquired into the alleged promise or misadvice. Here, the trial court *did* inquire, and its inquiry was robust. The judge addressed the precise mandatory minimum consequence Mr. Mejia now says counsel failed to explain, required the plea form to be corrected in his presence, and obtained Mr. Mejia's sworn acknowledgment that no one had told him anything different regarding the mandatory minimum penalties. So even if claim two had adequately raised the claim Mr. Mejia now advances on appeal, the plea colloquy and corrected plea form conclusively refute any assertion that he entered the plea unaware of the twenty-five-year minimum mandatory.

B.

13

Here, we pause to emphasize the narrowness of our holding. Nothing we say today should be understood to authorize a postconviction court to avoid the rule's requirements by declining to address arguable claims and simply attaching the entirety of the record in the hope that an appellate court will search for a basis to affirm. Rule 3.850 does not contemplate that practice. When a claim is denied on the basis of the record, the rule requires attachment of "that portion" of the files and records that conclusively refutes the claim or claims at issue, not wholesale incorporation of the case file. *See* Fla. R. Crim. P. 3.850(h)(4), (5).

We do hold, however, that a postconviction court is not automatically subject to reversal when it fails to expressly address a claim, provided the order's targeted attachments nonetheless permit meaningful appellate review and conclusively refute the omitted claim. Thus, if an appellant demonstrates that the postconviction court failed to rule on a fairly presented claim and the attached excerpts do not clearly and specifically refute it, we will continue to reverse. *See Walker v. State*, 137 So. 3d 1, 1 (Fla. 2d DCA 2014); *Gore v. State*, 100 So. 3d 177, 178 (Fla. 2d DCA 2012); *Loomis v. State*, 691 So. 2d 34, 35 (Fla. 2d DCA 1997). But where the attached record makes the basis for denial apparent and conclusively forecloses relief, a remand for the postconviction court to say expressly what the record already establishes would serve no purpose. In that limited circumstance, the omission is, at most, harmless. And, consistent with ordinary harmless error principles, the burden rests with the State to show from the attached record that there is no reasonable possibility remand would change the outcome because the omitted claim is conclusively refuted. *Cf. State v. DiGuilio*, 491 So. 2d 1129, 1135, 1138–39 (Fla. 1986). The State has met

14

that burden here. Because the plea colloquy excerpts attached to the order conclusively refute the omitted claim and leave no reasonable possibility that remand would alter the result, we will not reverse merely because the postconviction court failed to expressly address that point, even assuming the claim was sufficiently presented for adjudication.

## IV.

In sum, rule 3.850 is designed to ensure that postconviction claims are heard, that curable pleading defects are not treated as fatal in the first instance, and that claims conclusively defeated by the record are resolved without unnecessary further proceedings. Properly applied, the rule serves each of those functions at once. It does not require postconviction courts to disregard inartful pleading; nor does it require them to supply what a motion itself never fairly sets forth. Liberal construction remains an important protection for pro se litigants, but it is not a substitute for pleading. At some point, a postconviction court must be able to discern from the motion itself what act or omission is being challenged, why that alleged failing matters under a recognizable legal theory, and what facts are said to entitle the movant to relief. Without that much, there is no claim to adjudicate, and therefore no occasion either to adjudicate relief on the merits or to invite amendment under *Spera*.

Here, Mr. Mejia's motion did not fairly present the involuntary plea theory he now advances. What he pleaded was a claim directed at what he characterized as an upward departure from the lowest permissible sentence and counsel's failure to object to it. The single sentence on which he now relies did not identify the twenty-five-year minimum mandatory as the omitted advice, did not allege that he entered the plea without understanding the consequences, and did not allege that he

15

would have rejected the plea and insisted on proceeding to trial had he known.  The postconviction court therefore did not err by failing to treat that sentence as a separate postconviction claim.

And even if the motion could bear that construction, the plea colloquy and corrected plea form conclusively refute it.  The record leaves no genuine uncertainty that Mr. Mejia was advised, in unmistakable terms, that Counts I and II carried twenty-five-year minimum mandatory sentences; that the written plea form was corrected in open court to reflect that consequence; and that Mr. Mejia acknowledged under oath both that he understood the mandatory minimum penalties applicable in his case and that no one had told him otherwise.  On this record, remand would not result in a different outcome.  It would merely require the postconviction court to say expressly what the record already demonstrates.

For these reasons, we affirm the summary denial of relief.

Affirmed.


NORTHCUTT and SLEET, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

16